Allaire v. Ouland.

*ALLARE *against* OULAND.                    [*52]

Where A. directed O., his servant, to enter a certain piece of meadow which
   he said belonged to him, but which in fact belonged to M., and promised to
   save O. harmless, the promise was held to be an original undertaking and
   not necessary to be in writing, and that the act of B. in obeying A's com-
   mand was lawful and a sufficient consideration for the promise of indemnity.
And judgment having been recovered for such entry against O. in an action
   afterwards brought against A. he alleged in his declaration that he was sued
   for such entry by M. " by a certain writ commonly called an attachment of
   privilege against the said O. to answer to the said M. in a plea of trespass upon
   land &c." This allegation was judged to be impertinent and not necessary
   to be proved. *Kent*, J. diss.
But if it were necessary to prove it, it was sufficiently established by the record
   of recovery in the suit against O. *Kent*, J. diss.
Where matter is stated in a declaration which might have been struck out
   on motion, as surplusage, it need not be proved at the trial.
Where a promise, in one of the counts in a declaration, by reference to the
   day in the preceding count, was laid after the breach assigned, the mis-
   take was held to be cured by the verdict.

THIS cause came before the court, on a writ of error, from
the West Chester common pleas.

The declaration contained four counts. The first count
stated that Ouland, (the defendant in error,) on the 10th
September, 1796, was a hired servant of Allaire, and retained
in his service, and that Allaire was possessed of a certain
*close* of salt meadow, and also of sixty-six rods of meadow,
adjoining the meadow of P. J. Munro, in Mamaroneck, and
leading from the said close to the highway; that Allaire
pointed out a piece of salt meadow, part of the said meadow
of the said Monro, as being the said sixty-six rods of meadow

belonging to him, the said Allaire, and affirmed it to be the same, and then and there directed the said Ouland to open a fence across the said piece of meadow, so pointed out as the said sixty-six rods of meadow of the said Allaire, and to pass through the same to the highway, and did then and there assume and promise the said Ouland, that if he would open the said fence and pass through the said piece of meadow, so pointed out to him, that he, the said Allaire, would indemnify and save him, the said Ouland, harmless from all suits, &c. that he, Ouland, as the servant of the said Allaire, did, therefore. in obedience to the direction and commands of the said Allaire, as his servant, enter on the said piece of meadow, so pointed out to him, and did open the said fence and pass through the said piece of meadow to the public highway, about the business and work of the said Allaire, and he, the said Ouland averred that the said piece of meadow, so pointed out by the said Allaire as the said sixty-six rods belonging to the said Allaire, did not belong to him, but, in fact, was part of the adjoining meadow in the tenure of the said Munro; that, afterwards, to wit, on the 12th September, 1796, the said Munro sued out of the court of common pleas of [*53] West Chester county, a certain *writ, commonly called an attachment of privilege, against the said Ouland, to answer to the said Munro in a plea of trespass upon land &c. and such proceedings were thereupon had, that the said Munro, afterwards, to wit, in the term of September, 1779, by the judgment of the said court, recovered against the said Ouland, 36 dollars and 87 cents damages, for the said trespass, &c. And that the said trespass for which the said damages were so recovered, was for the same opening of the said fence erected across the said piece of meadow, pointed out to the said Ouland by the said Allaire, as for the said meadow belonging to him, &c. and for passing and repassing through the said piece of meadow, &c. and that, afterwards, a *ca. sa.* was issued on the said judgment, out of the said court of common pleas, against the said Ouland, upon which he was arrested by the sheriff, and detained in his custody twenty-four hours, until he paid and satisfied the

Allaire v. Ouland.

amount of the said judgment, and the sheriff's fees on the said execution, &c. The second count was like the first stating a recovery against Ouland for a second trespass in a second suit by Munro. In the third count the promise to indemnify was laid to be made "on the day and year last aforesaid." The declaration concluded in the usual form, and the defendant below pleaded *non assumpsit.*

At the trial, in the court below, a bill of exceptions was taken. It was proved, among other things, that Ouland, before he put in bail to the suits of Munro, put in pleas of justification; that after bail was put in, Munro entered a judgment by default, which the court below, afterwards, refused to set aside. The records of recovery in both suits were produced, and the executions, &c. which were satisfied. The defendant below then insisted that the plaintiff below must also produce the writs of attachment of privilege, mentioned in his declaration, which not being done, he moved for a nonsuit, which motion the court below overruled.

The following errors were assigned by the plaintiff in error :

*1. That the plaintiff below was bound to produce     [*54] the writ of attachment of privilege, as alleged in his declaration.

2. That the promise of indemnity ought to have been in writing, it being for the default of another.

3. That the promise was to indemnify for an illegal act, and therefore void.

4. That no contract of indemnity was proved.

5. That Ouland, in the court below, suffered a judgment in the suit by Munro, to pass against him, by default.

6. That the promise was made after the trespass was committed.

7. That the third count in the declaration is bad, because the day on which the promise was laid refers to the day last mentioned in the second count, which was the 6th November, 1797, after the injury or breach is stated to have happened, in September, 1796, and that the verdict being general below, the judgment ought to be reversed.

*Riggs* and *Woods*, for the plaintiff in error.

*Harison*, for the defendant in error.

RADCLIFF, J. I shall examine the errors assigned, in the order in which they are stated.

1. The rule is, that what may be rejected as surplusage, and which might have been struck out, on motion, need not be proved ; as where the declaration contains impertinent matter, foreign to the cause of action ; but if the very ground of the action be misstated, as if the plaintiff undertake to recite that part of a deed on which the action is founded, and it is misrecited, it will be fatal. (*Bristow* v. *Wright,* Doug. 642, 643.) In *Savage, qui tam,* v. *Smith,* (2 Black. Rep. 1101,) it was held, that if a plaintiff set forth a judgment on which a *fi. fa.* issued, although it would have been sufficient to set forth the *fi. fa.* only, he shall be held to prove the judgment, and the difference is there taken, between [*55] immaterial and impertinent averments ; *the former must be proved because relative to the point in question, but the latter need not.

So, in all cases, where the action depends on the proof of a contract, the contract must be proved as laid, for it is the *gist* of the action. (Cowp. 671. 1 Term Rep. 447. 3 Term Rep. 531.) And a trivial variation in setting out a record or any written instrument, as well as a contract, has been held to be fatal. (4 Term Rep. 560, 590, 687.) Yet in the case of *King* v. *Peppil,* (1 Term Rep. 235,) the word "if," in the declaration, in setting forth a precept, was rejected as sur-plusage, and the record as produced, without that word, was admitted as sufficient to support the declaration. The cases which have been cited, so far as they relate to a variance between the declaration and the evidence, are not applicable to the present, but they serve to show the principle on which the English courts have proceeded. The question here is, whether the setting out the attachment of privilege is not mere surplusage, and irrelative to the ground of action. If so, then according to the rule as laid down by Lord Mansfield, and Chief Justice De Grey, it need not be proved. That it is irrelative and mere surplusage is, I think, clear. It is

immaterial to the plaintiff's title to a recovery, whether a writ of attachment of privilege was ever sued out by Munro. It is not the ground of his action. The recovery or judgment against him, and against which the defendant below promised to indemnify him, is the *gravamen* of which he complains. This is sufficiently alleged in the declaration, without reference to the attachment of privilege.(*a*)

(*a*) Mr. Gould in his work on pleading has pointed out in clear and definite terms the distinction between impertinent and immaterial averments. "There is an important distinction to be observed between immaterial and impertinent averments : viz. that the former must, in many cases, be precisely proved ; whereas the latter require no proof in any case. For the purpose of explaining this distinction, it must be premised that an *impertinent* averment is a statement of matter altogether *foreign* to the merits of the cause, and which might, therefore, be *entirely struck out* without injury to the pleading. An *immaterial* averment (as contra-distinguished from an *impertinent* one) has been variously described ; but not always with sufficient precision. In the case of *Bristow v. Wright,* Doug. 665, Lord Mansfield, in commenting upon the distinction between these two species of averments, observes, ' The distinction is between that which may be rejected as *surplusage*, and which might have been *struck out* on motion, and what cannot. Where the declaration contains *impertinent matter, foreign* to the cause, and which the master, on a reference to him, would strike out, that will be rejected by the court, and need not be proved. But if the *very ground* of action is mis-stated ; as where you undertake to recite that part of a deed, on which an action is founded, and it is mis-recited ; that will be fatal.' This language, though sufficiently descriptive of an *impertinent* averment, affords rather a particular *example* than a general definition or description of an *immaterial* one. The following is therefore submitted as a substantially correct description of the latter :—An *immaterial* averment is one, alleging, with *needless particularity* or *unnecessary circumstances,* what is material and necessary, and which might properly have been stated *more generally,* and without such circumstances or particulars ; or in other words, it is a statement of *unnecessary particulars* in connection with, and as descriptive of *what is material.*" Gould's Pl. 160, 161, 162. The author then proceeds to illustrate his observations by an accurate and concise review of *Bristow v. Wright,* after which he further says : " The same rule, in regard to immaterial averments, was recognized in the case of *Savage, q. t. v. Smith,* 2 Bl. Rep. 1101, 1104. This was an action of debt against a bailiff, for extorting illegal fees, on a writ of *fieri facias.* The declaration described the *fi. fa.* as having been issued, on a judgment recovered in B. R. at a specified term for £51, 12, 0, debt, and £6, 10, 0, costs. But the plaintiff having failed, on the trial, to prove such a judgment, the court held, that admitting it to have been *unnecessary* for the plaintiff to state any judgment ; (id. 1104, and vid. 5 T.

· But if it was necessary to have proved that a writ of attachment of privilege did issue, I think it was sufficiently

R. 498,) that is to say, admitting the statement, in that particular, to have been *immaterial*, yet being made *as descriptive of the foundation* of the *fi. fa.*, it was necessary to be proved as made." Gould's Pl. 163. " The rule that immaterial averments must be strictly proved, is however by no means universal, though it appears to have been formerly so understood: The *principle* of the rule manifestly embraces (it is conceived) no other averments of that class than those of which a *variance* may be predicated. And the rule itself is now to be understood as limited by that principle." Id. 164, 165. " The rule then, as limited by the more modern authorities, appears to be, that no immaterial averment requires precise proof, unless the failure of such proof would occasion a *variance* between the pleading and the proof: or, (in different language,) strict proof of such averment is not, at this day, necessary, unless the subject of the averment is a *record*—a *written instrument*— or (as I conceive) an *express contract.* Inasmuch as these are in strictness, the only subject of variance (properly so called) when the mistake in the pleading is in a point *not in itself material.*" Id. 164. In Cowen & Hill's Notes to 1 Phill. Ev. 503, note 398, to p. 206, it is observed that, " The decisions relating to the subject of the foregoing extract, both American and English, will be found to exhibit considerable want of uniformity; and this has probably arisen in some measure, from not attending to the reason of the distinction taken : *Bristow* v. *Wright*, and *Williams* v. *Allison*, cited in the text." See the cases cited id. notes 401 and 407. "Where the plaintiff declared upon a special contract, alleging that he was indebted to the defendant's testator in a certain sum secured to the testator by bond and mortgage executed by *the plaintiff;* and that it was agreed the plaintiff should convey the mortgaged premises to the testator—the latter to discharge the plaintiff from his indebtedness, sell the premises, and after deducting the amount due him, pay the surplus to the plaintiff, and on the trial, it turned out that the bond and mortgage were executed by the plaintiff and another; *the court,* in relation to the variance, adopted the rule as stated by Mr. Chitty, 1 Chitty's Pl. 295, that every allegation in an inducement which is material, and not impertinent or foreign to the cause, and which cannot be rejected as surplusage, must be proved as alleged. And *it is added:* ' this is particularly true in setting forth written instruments. As this count is framed, the allegation which respects the existence and cancelling the mortgage, cannot be stricken out as surplusage; and if not, it should have been truly stated.' *Hess* v. *Fox*, 10 Wend. 436, 437. It has been held, that in an action on a bill or note payable at a particular time and place, if the plaintiff aver specifically that a demand was made at the time and place, he will be bound to prove it. *Conn's adm'r* v. *Gano's ex'r*, 1 Hamm. Rep. 483. The court concede that it is wholly unnecessary to make this averment; but they say, ' being made it must be proved; in an action against the drawer or endorser of a bill, it is not necessary to state that the drawee accepted it; but

Allaire v. Ouland.

proved by the record which was given in evidence. It is stated that P. J. Munro, the plaintiff in the suit against Ouland, sued as one of the attorneys of the court, according to the privileges of such attorneys, used and approved, &c. This may be received as sufficient evidence of the writ of attachment of privilege, on the same principle, that Holt, Ch. J. in the case of *Crawley* v. *Blewett,* 12 Mod. 127,

Chitty says, if it be stated, it must in an action against the drawer, be proved ;" and they cite Chitty on Bills, 459. Pease, J. dissenting in the above case states his views as follows: ' The true distinction between an immaterial averment, which it is necessary to prove, and one which it is not, I consider to be this: when the plaintiff avers in his declaration a fact, the converse of which being pleaded or proved by the defendant, would be a defence to the action, then the averment ought to be proved. But if the fact averred, be every way immaterial—if it form no part of the plaintiff 's right to recover, and if the converse would constitute no defence to the action, then it would not be only useless to prove it, but would be an unnecessary waste of time and money, and a trifling with the administration of justice.' This test is perhaps a true one in the main, but admits of qualification. Instances are of frequent occurrence, where, through the inadvertence of the pleader, an averment has been made of unnecessary particulars, in ' connection with and as descriptive of what is material,' and where a failure to prove such particulars resulted fatally. And yet, it would be hard to perceive how those particulars can be said to form an essential part of the plaintiff's right to recover ; or the converse of them to constitute a defence. Where a declaration on a bill of exchange, by the endorsees against the acceptor, alleged that it was endorsed to the plaintiffs, as surviving assignees of A. B., after his bankruptcy ; it was held that the plaintiffs were bound to establish both points ; viz. that the bill was endorsed after the bankruptcy of A. B., and to the plaintiffs as surviving assignees, &c. ; though if the declaration had been general, in the names of the plaintiffs, ' the possession of the bills by them would have done.' *Bernasconi* v. *The Duke of Argyle,* 3 Carr. & Payne, 29." According to this distinction the omission to prove circumstances alleged not essential to the claim or charge, and which might have been wholly omitted, is not material, provided the circumstances so alleged do not operate by way of description of others which are essential. See 4 Stark. Ev. 1534. *Utile per inutile non vitiatur.* (3 Rep. 10.) Bro. Max. 82, 83. The collection of cases upon this subject is far too large to be cited in this note. The most important may be found in 1 Phil. Ev. Cow. & Hill's ed , p. 206, *et seq.* Cow. & Hill's Notes to 1 Phil. Ev. 503, *et seq.* 3 U. S. Digest, by Curtis, tit. Pleading, II. c. pl. 225, 229, tit. Pleading, II. d. 1 Smith Lead. Cas. 329, note to *Bristow* v. *Wright,* and see also the note to Hare & Wallace's ed. 1 Greenleaf Ev. 59, 65, 67, 68, 69, 71, 76. 3 Stark. Ev. 1525, *et seq.* 1 Chit. Pl. 5th Am. ed. 208, *et seq.* and cases cited in the notes.

[*56]   *admitted the plea-roll to be sufficient proof of the bill, where the party was alleged to have been impleaded by bill.

2. The promise was not to indemnify for the default of another; but was made to the plaintiff himself, for an act to be done by him, as the servant of the defendant below. It was an original undertaking, and not a collateral promise.

3. The plaintiff was the servant of the defendant, and obliged to obey his lawful commands, and he commanded the plaintiff to enter into the *locus in quo*, claiming and declaring it to be his own. If this had been true, the entry would have been lawful. The plaintiff relying on the truth of the declaration of the defendant, did enter. The act on his part, was, therefore, lawful, and a good consideration for the promise.(a)

(a) In the case of *Coventry* v. *Barton*, 17 Johns. R. 142, it was held that if a consideration be illegal, it will not support an *assumpsit*. As if one request or direct another to do an act which he knows, at the time, will be a *trespass*, and promise to indemnify him, the promise is void; but if the party who does the act at the instance or by the command of another does not know, at the time, that he is committing a trespass, the promise to indemnify is valid. As, where the plaintiff, being ordered out by the *overseer* of highways of work on a certain road, was ordered by the overseer of the highways, and by the direction, also, of the *commissioner* of highways, to pull down and remove a turnpike gate and fence, erected at the intersection of the road, on which the parties were working, with a turnpike road, supposing it to be a nuisance, and the plaintiff, accordingly, removed the gate and fence, on the promise of the *overseer* to indemnify him; this was held to be a valid promise, on which the plaintiff might maintain an action to recover of the defendant an indemnity, for what he had been compelled to pay on a judgment in an action of trespass recovered against him, by the turnpike company whose gate had been so removed. And in *Stone* v. *Hooker*, 9 Cowen, 154, it was held that a promise to indemnify one against a trespass includes an authority to the promisee to employ and indemnify agents; and if he is compelled to pay such agents damages recovered against them for the trespass, he may recover over against his promisor, the same as for damages paid by the promisee directly, to the person trespassed upon; and, where such agents were severally sued by the person trespassed upon, the original promisor having notice, one of them after trial and recovery against another, gave a *cognovit* in his own suit, and paid, and his promisor paid him; *held*, the agent appearing to have acted in good faith, that the original promisee might recover the amount of what he thus paid.

4. There is no ground for the fourth error alleged, for the contract of indemnity was sufficiently proved by the testimony of two witnesses.

5. The defendant below had notice of the suits brought against the plaintiff by Munro, for when the plaintiff was arrested, he informed the defendant of it, who promised to enter bail for him, and acknowledged his promise to defend the suits, and save the plaintiff harmless. The judgments by default were obtained, in consequence of the refusal of Allaire to put in bail for Ouland, in due season. Under these circumstances, I think the defendant in error did all that could be required of him, as to the defence of the suits, and that it was incumbent on the plaintiff in error to make the defence, if any was necessary.(b)

6. The sixth error alleged is not supported by the fact, as appears from the bill of exceptions.

7. Any inconsistency as to the dates, is now immaterial, The promise has been proved, according to the truth, to be prior to the time the breach is stated; besides, the defect is cured by the verdict.(c)  I am, therefore of opinion, that the judgment ought to be affirmed.

*Lansing, Ch. J., Lewis, J. and Benson, J. were   [*57] of the same opinion.

Kent, J. dissented.  He observed, that there was a valid cause of error assigned, to wit, that the attachment of privilege mentioned in the declaration was not produced at the trial ; that as the plaintiff below had thought proper to set it forth specially, he was bound to produce it.  This was immaterial matter, which must be proved.  The distinction between matter impertinent, and matter immaterial, was well defined and settled, and the rule requiring the latter to be proved, was intended to inculcate the necessity of precision and brevity in pleading, and to serve as a rod over the

(b) Stone v, Hooker, cited supra, n. a.   Trustees of Newburgh v. Galatian, 4 Cowen, 340. Mott v. Hicks, 1 id. 513. Hale v. Andrus, 5 id. 225. A special count on a promise to indemnify must allege the plaintiff damnified.  Farnsworth v. Nason, Bray. 194.  Hide v. Childs, 1 Chip. 230.

(c) See 1 Saund. 238, n. 1.

counsel who should incumber the record. (*Savage* v. *Smith*, 2 Black. Rep. 1101. *Bristow* v. *Wright and Pugh*, Doug. 665 ; and *Neding* v. *Pippel*, 1 Term Rep. 235.) The rule extended to all cases of records and written contracts. The attachment of privilege was here connected with the cause of action, and it was therefore not impertinent, but immaterial matter, and it was not sufficiently shown by the record of the judgment, produced upon the trial, because nothing in the record necessarily implied that that species of process had been issued. For this cause, therefore, and without examining the other causes of error, he was of opinion that the judgment below ought to be reversed.

Judgment affirmed.